IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

CARLOS YOUNG, and
BARBARA YOUNG

                **Plaintiffs,**

v.                                  1:07-cv-02310-WSD

QUIXTAR, INC.,

                **Defendant.**

## OPINION AND ORDER

This matter is before the Court on Defendant Quixtar, Inc.'s ("Quixtar") Motion to Dismiss, or, Alternatively, to Compel Arbitration [4].

## I.   BACKGROUND

On August 22, 2007, Plaintiffs Carlos Young and Barbara Young (collectively, "Plaintiffs") filed a Complaint in the State Superior Court of Gwinnett County, Georgia seeking a Temporary Restraining Order ("TRO") and preliminary injunctive relief against Quixtar.[1]  Plaintiffs allege that Quixtar is operating an illegal pyramid scheme.

---

[1] Quixtar was organized in 1999 as a sister company to Amway Corporation, a multi-level marketing business.  Quixtar was formed to conduct e-commerce to expand Amway's traditional business.  Amway distributors largely migrated to Quixtar, and Quixtar ultimately supplanted Amway's business.

Plaintiffs entered into Quixtar's uniform distributor contract to become an Independent Business Owner ("IBO")–distributor–of Quixtar products. Plaintiffs continue to function as an IBO today. Complaint ¶ 2. Plaintiffs allege that Quixtar's wholesale prices forced them to shift from selling Quixtar products to recruiting new participants into Plaintiffs' distributor pyramid as the only practical way to operate profitably. Id. at ¶ 12. In response to Quixtar's alleged business strategy, certain IBOs developed and began to operate a "tools" business, which is entirely independent from Quixtar. This business is designed to provide business methods to IBOs in order to assist them in operating and building their businesses successfully. Id. at ¶ 22. Quixtar claims this tools business is not permitted under the IBOs' agreements with Quixtar, and Quixtar has instructed its IBOs "to refrain from selling or marketing, through Quixtar's proprietary distribution system, certain products and services that Quixtar believes are a threat to its business." Motion to Dismiss, p 1-2. Plaintiffs contend that these tools businesses do not compete with or threaten Quixtar's business or viability, but simply provide IBOs with business development support which is not provided by Quixtar. Compl. ¶¶ 21, 22. Quixtar has criticized those IBOs involved in this tools business. Plaintiffs further contend, without specification, that this criticism has damaged

their business reputation, and that Quixtar has threatened to suspend or terminate any and all IBOs who do not "commit" to Quixtar in "full compliance" with certain newly enacted IBO operating directives. Compl. ¶ 33. Plaintiffs sought a TRO preventing Quixtar from taking any action against them until a hearing for a preliminary injunction could be held.[2]

On August 22, 2007, the same day in which Plaintiffs filed their Complaint in the Gwinnett County Superior Court, the Superior Court Judge granted the TRO requested by the Plaintiffs, enjoining Quixtar from terminating Plaintiffs as an IBO.

On September 21, 2007, Quixtar removed the state court case to this Court. On September 26, 2007, Quixtar filed its Answer to the Complaint and filed its Motion to Dismiss, or Alternatively, to Compel Arbitration (the "Motion").[3]

---

[2] Plaintiffs apparent objection is that Quixtar did not submit their dispute to the dispute resolution process to which the parties agreed in the contract that governs their business relationship. Interestingly, in this motion Defendant seeks the Court to order arbitration pursuant to that same agreement, if this action is not dismissed. The Court wonders why this remedy was not agreed to voluntarily by the parties.

[3] On November 7, 2007, Quixtar filed with the Court a Certificate of Service indicating that Plaintiffs' counsel in this case was served with Quixtar's Answer and Motions.

Plaintiffs have not filed a response to the Motion. Pursuant to Local Rule 7.1B, the Motion is considered unopposed.

## II.   DISCUSSION

Quixtar moves to dismiss on the grounds that "this Court is the wrong forum" in which to decide the contract dispute between the parties.[4] Motion to Dismiss, p 2. Quixtar contends that Plaintiffs and Quixtar agreed, in the contract in which they entered, to resolve all disputes exclusively in a three-stage Alternative Dispute Resolution ("ADR") process,[5] which includes informal conciliation, and if

---

[4] Defendant claims this Court has diversity jurisdiction under 28 U.S.C. § 1332. Plaintiffs are alleged to be residents of Columbia County, Georgia. Compl. ¶ 2. Defendant is alleged to be a Virginia corporation with its principal place of business in Michigan. Notice of Removal ¶ 2. The Complaint, although it seeks injunctive relief, alleges an amount in controversy which exceeds $75,000. See Leonard v. Enterprise Rent a Car, 279 F.3d 967, 973 (11th Cir. 2002) ("The value of injunctive or declaratory relief for amount in controversy purposes is the monetary value of the object of the litigation that would flow to the plaintiffs if the injunction were granted."). Quixtar asserts that "during the 12 month period ending July, 2007, the Plaintiffs' business sold over $75,000 of Quixtar products. It is reasonable to expect the Plaintiffs' business to generate the same or greater sales for the foreseeable future." Notice of Removal ¶ 6. Quixtar's assertion is uncontested.

[5] The only disputes excepted from the conciliation and arbitration requirement under the contract are those concerning debts for products or services for less than $10,000. Rule 11, Quixtar Rules of Conduct, p D-39. Neither party contends that this exception applies here.

necessary, formal conciliation followed by binding arbitration.  Id.  Quixtar requests that the Court dismiss the action, or, alternatively, stay these proceedings and compel the parties to resolve all disputes using the ADR process upon which the parties agreed in their contract.  Id. at 2-4.

The Federal Arbitration Act, 9 U.S.C. § 4 (2000) ("FAA"),  is based on the strong federal policy supporting arbitration agreements.  In enacting the FAA, Congress was seeking "to reverse the longstanding judicial hostility to arbitration agreements . . . and to place [these] agreements on the same footing as other contracts."  EEOC v. Waffle House, Inc., 534 U.S. 279, 289 (2002).  The Supreme Court and this Circuit consistently have required federal courts to "rigorously enforce agreements to arbitrate."  Shearson/Am. Express v. McMahon, 482 U.S. 220, 226 (1987); Ivax Corp. v. B. Braun of Am., Inc., 286 F.3d 1309, 1315 (11th Cir. 2002); Brandon, Jones, Sandall, Zeide, Kohn, Chalal & Musso, P.A. v. Medpartners, Inc., 312 F.3d 1349, 1357 (11th Cir. 2002) (quoting Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 625 (1985)).  It is for the Court to decide "whether the parties have a valid arbitration agreement at all or whether a concededly binding arbitration clause applies to a certain type of controversy."  Green Tree Fin. Corp. v. Bazzle, 539 U.S. 444, 452 (2003).

To determine whether arbitration should be compelled, "the Court must assess whether: (1) there is a valid written agreement to arbitrate; (2) the issue [sought to be arbitrated] is arbitrable under the agreement; and (3) the party asserting the claims has failed or refused to arbitrate the claims.'" Lomax v. Woodmen of the World Life Insurance Society, 228 F. Supp. 2d 1360, 1362 (N.D. Ga. 2002) (citations omitted).  In deciding whether there is a binding agreement to arbitrate, "general Georgia contract law applies. . . ." Caley v. Gulfstream Aerospace Corp., 333 F. Supp. 2d 1367, 1374 (N.D. Ga. 2004).  "The basic requirements for a binding contract under Georgia law are (1) a definite offer and (2) complete acceptance (3) for consideration." Id. (citing Moreno v. Strickland, 567 S.E.2d 90, 92 (Ga. Ct. App. 2002)).

It is undisputed that Plaintiffs and Quixtar entered into a uniform distributor contract in which Plaintiffs became an IBO selling Quixtar products.  Compl. ¶ 2; Motion to Dismiss, p. 1.  The contract included Quixtar's Rules of Conduct for IBOs.  Rule 11 et seq. of those rules outlines the dispute resolution process required to be used to "address any issues that relate to your Quixtar Independent business.  This process includes situations where an IBO . . . may be the subject of a claimed Rule violation. . . ." Rule 11, Quixtar Rules of Conduct, p D-39.

In this case, the parties agreed to a three-step ADR process that the parties must undertake in order to resolve virtually all disputes. The Quixtar ADR agreement, as detailed in the Rules of Conduct, begins with non-binding informal conciliation, moves to non-binding formal conciliation, and concludes with binding arbitration.[6] Plaintiffs have not sought conciliation or arbitration to resolve any disputes. The parties having entered into a valid, written agreement to arbitrate, the Court is required to enforce the arbitration agreement.

---

[6] "In the event that the parties are unable to resolve their disputes within 90 days or after the above outlined Conciliation Process is complete, whichever is later, the parties are *required* to submit any remaining claim(s) arising out of or relating to their IB, the IBO Plan, or the Rules of Conduct . . . to *binding arbitration* in accordance with the Arbitration Rules as stated below. The Arbitration award shall be *final and binding* and judgment thereon may be entered by any court of competent jurisdiction." Rule 11.5, Quixtar Rules of Conduct, p D-42 (emphasis added). "The Arbitrator's award shall be final and binding. Judicial review, if any, shall be limited, as provided by law. Parties to these procedures shall be deemed to have consented that judgment upon the arbitration award may be entered by any court of competent jurisdiction. Proceedings to enforce, confirm, modify, or vacate an Award will be controlled by and conducted in conformity with the Federal Arbitration Act, 9 U.S.C. Sec 1 et. seq. [*sic*] or applicable law." Rule 11.5.49, Quixtar Rules of Conduct, p D-51.

### III.  CONCLUSION

For the foregoing reasons,

Quixtar's Motion to Dismiss or, Alternatively, to Compel Arbitration [4] is **DENIED IN PART AND GRANTED IN PART.**

**IT IS HEREBY ORDERED** that Quixtar's Motion to Dismiss is **DENIED**.

**IT IS FURTHER ORDERED** that Quixtar's Motion to Compel Arbitration is **GRANTED**.[7]

**IT IS FURTHER ORDERED** that the Clerk shall stay this litigation pending arbitration.

**SO ORDERED** this 29th day of January, 2008.

_____
WILLIAM S. DUFFEY, JR.
UNITED STATES DISTRICT JUDGE

---

[7] Quixtar's Motion to Suspend Pre-Trial Discovery Obligations [7] is **DENIED** as moot.